IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MAGNOLIA A. GRAVES                                                    PLAINTIFF

V.                         CASE NO. 5:14CV00004-BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                       DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Magnolia A. Graves appeals the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying her claims for Disability

Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for

Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  For reasons

set out below, the decision of the Commissioner is AFFIRMED.

I.    <u>Background</u>

On November 18, 2008, Ms. Graves filed for DIB and SSI benefits due to a

bulging disc in her neck, arthritis, memory problems, migraine headaches, high blood

pressure, acid reflux, high cholesterol, fibromyalgia, bilateral carpal tunnel syndrome,

hiatal hernia, heel spurs, a spur in her back, heart problems, chest pain, chest fluid, and

stomach problems.  (Tr. 241)  Ms. Graves's claims were denied initially and upon

reconsideration.  At Ms. Graves's request, an Administrative Law Judge ("ALJ") held a

hearing on August 3, 2010, where Ms. Graves appeared with her lawyer.  (Tr. 31-55)

After remand from the Appeals Council, the ALJ held a second hearing on July 20, 2012.

At the second hearing, the ALJ heard testimony from Ms. Graves and a vocational expert

("VE").  (Tr. 56-77)

The ALJ issued a decision on August 15, 2012, finding that Ms. Graves was not disabled under the Act.  (Tr. 12-24)  The Appeals Council denied Ms. Graves's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-5)

Ms. Graves, who was 50 years old at the time of the second hearing, had a high school education and past relevant work experience as a bank teller and supervisor.  (Tr. 62-63, 72)  Ms. Graves testified that, due to pain, she stayed in bed all day and could not care for herself.  (Tr. 65-66)  She indicated in her daily activities form that she could do little but walk from her bed to the couch and watch television.  (Tr. 262-269)  Due to a lack of insurance, at the time of the hearing Ms. Graves was not seeing a physician for any of her impairments.  (Tr. 65-67)

## II.    <u>Decision of the Administrative Law Judge</u>[1]

The ALJ found that Ms. Graves had not engaged in substantial gainful activity since October 27, 2008, her amended onset date.  The ALJ found that Ms. Graves had the following severe impairments: fibromyalgia, disorder of the back/degenerative disc disease of the cervical and lumbar spine, sensory neuropathy/mild bilateral carpal tunnel syndrome, migraine headaches, hypertension, depression/anxiety, bipolar disorder, and somatoform disorder.  (Tr. 14-15)  However, the ALJ found that Ms. Graves did not have

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g) and 20 C.F.R. § 404.1520(a)-(g).

an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 15-16)

According to the ALJ, Ms. Graves had the residual functional capacity ("RFC") to perform a slightly reduced range of light work.[3]  Mr. Graves could occasionally climb stairs, ladders, balance, stoop, kneel, crouch, and crawl, but must avoid machinery and unprotected heights.  Ms. Graves was able to use either arm occasionally for overhead reaching.  And she could perform unskilled work where there are few, if any, workplace changes, interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, with few variables, and little judgment, and where required supervision is simple, direct, and concrete.  (Tr. 17-22)

Ms. Graves could not perform her past relevant work as a bank teller and supervisor.  (Tr. 23)  After considering the VE's testimony, however, the ALJ determined that Ms. Graves could perform the jobs of machine tender and small assembler.  (Tr. 23-24, 72-75)  Accordingly, the ALJ found Ms. Graves was not disabled under the Act.  (Tr. 24)

---

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

III.    **Analysis**

A.    **Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."  *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion."  *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B.    **Ms. Graves's Arguments for Reversal**

Ms. Graves asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence.  Specifically, she argues that the ALJ erred:  in the RFC finding (#15, pp. 8-11); and in discounting Ms. Graves's subjective allegations of disabling pain.  (#15, pp. 11-15)

1.    **Residual Functional Capacity**

The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).  It is the claimant's burden, however, to prove RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).  In this

case, Ms. Graves argues that the ALJ failed to consider her limitations in the use of her arms and hands, and in her ability to walk and stand.  (#15, p. 9)

The ALJ discussed potential limitations in the use of Ms. Graves's arms and hands.  (Tr. 19-20)  The ALJ noted nerve conduction studies showing sensory neuropathy in the hands.  (Tr. 637)  Ms. Graves's physician described her condition as "very mild bilateral carpal tunnel syndrome."  (Tr. 721)  Very mild carpel tunnel syndrome does not support a more limited RFC than that determined by the ALJ.

A nerve conduction study of Ms. Graves's upper extremities showed normal muscle findings, with slightly and mildly prolonged right and left nerve and median sensory latencies.  (Tr. 720)  These mild findings do not support an inability to use upper extremities.  Importantly, numerous medical records show no complaints with Ms. Graves's hands, but rather evidence of normal function of her extremities.  (Tr. 412, 413, 415, 416, 418, 466-67, 469-71, 473, 476, 479, 482, 484-85, 546-47, 551, 553, 561-63, 581, 582, 583, 605-07, 609-10, 612-13, 644, 645, 646, 647, 655, 679-81, 682, 685-87, 688, 704, 736-38, 739-40)[4]  Consistent with the medical evidence, the ALJ appropriately limited Ms. Graves to occasional overhead reaching.  (Tr. 17)  The record does not support any further limitations.

The ALJ acknowledged Ms. Graves's allegations that she could stand for only 10 minutes and could walk only from her bedroom to her living room.  (Tr. 18, 267)  The ALJ noted the lack of clinical findings supporting these alleged limitations.  (Tr. 18)

---

[4] Many of these records show that even when Ms. Graves complained of muscle and joint pain, physical examinations were normal.

Ms. Graves did not use any assistance device for ambulation, *e.g.* crutches, walker, wheelchair, cane, etc. (Tr. 268) After a motor vehicle accident in 2010, Ms Graves participated in physical therapy involving passive and active exercise. (Tr. 655-659) She was discharged after a month because she could drive without major discomfort, perform household chores more comfortably, was independent with her home exercise program, and had met all short and long term goals. (Tr. 655) In addition, numerous physical examinations over a long period of time failed to evidence any symptom that would limit Mr. Graves's ability to stand and walk as she alleged. (Tr. 412, 413, 449, 484-85, 546-47, 549-50, 581, 582, 583, 605, 628, 645, 646, 647, 655, 681, 685, 688, 700, 701, 702, 704, 739)

If Ms. Graves were so limited that she could barely move around her house, one would expect her to raise this at numerous doctor appointments. The Court has no doubt that Ms. Graves experienced pain, but the numerous physical examinations support the ALJ's RFC finding limiting Ms. Graves to a slightly reduced range of light work.

Ms. Graves also claims that the ALJ failed to find she would have to miss work, take unscheduled breaks at will, could not complete a normal workday, and could not be punctual. (#15, p. 9-11) These alleged limitations appear related to Ms. Graves's headaches. She has not supported these allegations, however, with any citation to the record.

Ms. Graves acknowledges medical records showing that her headaches were stable with treatment, but cites her testimony to show that a lack of insurance and medication

side effects prevented treatment.  (#15, p. 11)  The Court doubts that Ms. Graves could perform substantial gainful activity without medical treatment.  The relevant question, however, is not whether Ms. Graves was then currently receiving treatment.  The relevant question is whether her symptoms could be controlled with medication if she were being treated.  *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."); See *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (holding that depression was not severe when it improved with medication).  The record provides substantial evidence that treatment stabilized Ms. Graves's headaches to the point where she could complete a normal workday, five days a week.

### 2.  Credibility

An ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence.  20 C.F.R. §§ 404.1529; 416.929.  But once made, the ALJ's conclusions can be upheld if the record as a whole supports them.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Ms. Graves claims that the ALJ improperly discounted her subjective allegations of pain, which was her primary alleged limiting symptom.  (#15, pp. 11-15)  The ALJ, however, considered Ms. Graves's symptoms based on the criteria set out in 20 C.F.R. §§ 404.1529 and 416.929.  (Tr. 17-22)  The credibility assessment is supported by the record.

The ALJ discussed Ms. Graves's allegations of extreme limitations in daily living. (Tr. 21, 262-269) )  Ms. Graves testified that, due to pain, she stayed in bed all day and could not care for herself.  (Tr. 65-66)  She further alleged that she could do little but walk from her bed to the couch and watch television, that she had difficulty with personal care, and that she could do no household chores.  (Tr.262-269)  A year-and-a-half after claiming these limitations, however, Ms. Graves reported to her physical therapist that she could perform household chores and home exercises at a level sufficient for the therapist to recommend discharge.  (Tr. 655)  This recommendation came after ten total physical therapy visits.  (Tr. 655-59)

The ALJ discussed the medical evidence and determined, correctly, that the alleged limitations were not supported by the record.  (Tr. 18-22)  The physical examinations at numerous doctor visits failed to support Ms. Graves's allegations.  (Tr. 412, 413, 415, 416, 418, 449, 466-67, 469-71, 473, 476, 479, 482, 484-85, 546-47, 549-50, 551, 553, 561-63, 581, 582, 583, 605-07, 609-10, 612-13, 628, 644, 645, 646, 647, 655, 679-81, 682, 685-87, 688, 700, 701, 702, 704, 736-38, 739-40).  While Ms. Graves clearly suffered from pain, and it took time for her physician to find the right medication for her, her physician eventually settled on trigger point injections that were helpful.  (Tr. 534, 535)

At the time of the second hearing, Ms. Graves was not seeing any physician for any of her impairments.  (Tr. 66-67)  She did not require any emergency room visits, and there is no evidence she had taken advantage of low cost or no cost medical treatment.

(Tr. Tr. 66-67)  Ms. Graves testified that for treatment, she would basically lie down and take over-the-counter medications.  (Tr. 66-67)  She lacked insurance, but when a claimant fails to seek out or take advantage of low or no cost medical treatment, an ALJ may find that a claimant's financial condition was not severe enough to justify a failure to seek treatment.  *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).  Ms. Graves's lack of treatment severely undercuts her allegations of extreme limitations due to pain.

At least one physician declined Ms. Graves's request to say she could not work permanently.  (Tr. 449)  Consistent with the ALJ's finding, the physician thought that Ms. Graves could not continue her bank supervisor job, but "would have to make a decision about resignation, applying for another job, or doing [sic] on disability."  (Tr. 449)  This related to Ms. Graves's inability to tolerate her medications.  (Tr. 449, 536)  While this supports Ms. Graves's allegation that she could not perform past relevant work, it also indicates that the physician thought Ms. Graves could perform "another job."  At a separate mental diagnostic evaluation, a physician opined that Ms. Graves was malingering.  (Tr. 524-528)

Ms. Graves faults the ALJ for not specifically mentioning her work history.  (#15, p. 14)  The ALJ acknowledged Ms. Graves's long work history at the hearing.  (Tr. 63-64)  In the decision, the ALJ also cited the factors listed in *Polaski v. Heckler*, 739 F.2d 943 (8th Cir. 1984) and mentioned Ms. Graves's past work experience.  (Tr. 17)  Ms. Graves's work history was certainly a factor in her favor, but considering the record, the ALJ's limited mention of it does not call the credibility determination into question.

### 3. Fibromyalgia Standard

Ms. Graves argues that the ALJ failed to follow the standard adopted by the Eighth Circuit when considering fibromyalgia.  (#15, pp. 13-14)  She asserts that "[t]he Eighth Circuit has recognized that fibromyalgia is a disabling impairment which is difficult to diagnose, therefore, it requires a separate standard."  (#15, p. 13)  Ms. Graves cites *Pirtle v. Astrue*, 479 F.3d 931 (8th Cir. 2007) for this proposition.

There is no question that fibromyalgia can be a disabling impairment.  But *Pirtle* does not support Ms. Graves's assertion that the Eighth Circuit requires consideration of fibromyalgia under a "separate standard."  *Id.*  In *Pirtle*, as here, the ALJ found fibromyalgia to be a severe impairment.  (Tr. 14)  In *Pirtle*, as here, the ALJ considered fibromyalgia when determining RFC.  (Tr. 18-19)  And in *Pirtle*, as here, the ALJ determined that the record did not support the more extreme, subjective allegations made by the claimant.  (Tr 21-22)

## IV.  Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Ms. Graves's appeal is DENIED, and the Clerk of Court is directed to close the case, this 12th day of January, 2015.

_____

UNITED STATES MAGISTRATE JUDGE